

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 20 2004
CLERK, U.S. DISTRICT COURT
By ______________
Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SARA O. MONTOYA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-0056-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Sara O. Montoya seeks judicial review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

I. Background Facts

Montoya sustained a work injury on November 29, 1999, when she twisted her back while mopping a floor at a hospital where she worked. (Tr. 187, 226.) She complained of pain and was evaluated by a hospital physician who ordered a lumbar spine series. (Tr. 446-48.) The films showed no abnormalities, and on December 1, 1999, the physician prescribed

anti-inflammatory medication and muscle relaxants, recommended exercises for Montoya's back, and released her to restricted work with instructions that the restrictions should last seven to ten days. (Tr. 446.) Montoya's employer accommodated the restrictions and assigned her to the position of parking attendant, but Montoya quit working on January 31, 2000, because of continuing pain in her lower back. (Tr. 96.)

Montoya's injury was initially diagnosed as lumbosacral strain and was treated conservatively with physical therapy and medication. (Tr. 187, 429.) However, on March 2, 2000, an MRI showed slight decreased height and mild desiccation with minimal annular bulging at the L3-L4 disc. (Tr. 527.) Thereafter, Montoya was treated with injections (Tr. 450, 465), and was referred to Cotton D. Merritt, D.C., a chiropractor, who treated her extensively from 2001 until 2003. (*See* Tr. 200, 315.) During this period Montoya also underwent Intradiscal Electrothermal Therapy (IDET), a fusion at the L3-L4 level of her spine, and a surgery to remove "hardware" from her spine. (Tr. 251, 308, 559.)

Montoya filed for benefits on June 21, 2002, and her claim was denied by Administrative Law Judge (ALJ) R. Neil Lewis on August 23, 2003. (Tr. 15.) The Appeals Council denied review, and the ALJ's decision became the Commissioner's final decision. (Tr. 5-7.)

II. Judicial Review

Judicial review of the Commissioner's denial of Social Security benefits is limited to two issues: (1) whether the Commissioner's final decision is supported by substantial

evidence, and (2) whether the Commissioner used proper legal standards to evaluate the evidence. 42 U.S.C. § 405(g) (2004); *Newton v. Apfel*, 209 F.3d 448, 452 (citations omitted). Under this standard the court is not permitted to reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Rather, the court must scrutinize the entire administrative record to determine whether substantial evidence supports the Commissioner's decision. *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations and internal quotations omitted).

III. Discussion

Montoya argues that Judge Lewis erred in determining her Residual Functional Capacity (RFC) and in failing to find her disabled. In support of her argument, she contends that Judge Lewis failed to evaluate the opinion of Dr. Merritt under the treating physician rule.[1] She specifically points to Dr. Merritt's opinion that she had "an inability to work" and that her "compensable injury was at least a producing cause of her inability to work." (Tr. 343.)

---

1 Under the treating physician rule, the opinion of a claimant's treating physician should be accorded great weight in determining disability and must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *See Newton*, 209 F.3d at 455; S.S.R. 96-2p, 1996 WL 374188. However, such opinions may be assigned little or no weight relative to other opinions when good cause is shown and when the ALJ applies the factors set forth under 20 C.F.R. §§ 404.1527(d) and 416.927(d). *See id.*

Dr. Merritt's opinion is characterized as a legal conclusion rather than a medical opinion and as such is not subject to the treating physician rule. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work.") In addition, as a chiropractor, Dr. Merritt is not an "acceptable medical source" for purposes of determining disability, *see* 20 C.F.R. § 404.1513(d)(1) (2004), and Judge Lewis could accord the opinion less weight than he accorded to opinions provided by medical doctors in the record. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). Moreover, as noted by Judge Lewis, during the RFC examination Montoya admitted that she could stand for two to three hours during a day, could sit for five hours during a day, and could carry a gallon of milk. (Tr. 19, 341.) Thus, Dr. Merritt's opinion that Montoya was unable to work was inconsistent with Montoya's own admissions and the findings within his report. (Tr. 341, 343.)

In her second argument, Montoya contends that Judge Lewis erred in relying upon testimony offered at the hearing by medical expert and psychiatrist, Helmut Taubert, M.D. She contends that Dr. Taubert offered unreliable testimony regarding her mental limitations, incorrectly summarized the medical records, and falsely characterized Dr. Merritt's RFC opinion. In regard to Montoya's mental impairments, Judge Lewis relied on Dr. Taubert's testimony that Montoya had been diagnosed with major depression, moderate, single episode, and that because of this condition she might experience some loss of concentration and tardiness. (Tr. 19-20.) Contrary to Montoya's contentions, there is nothing unreliable about this portion of Dr. Taubert's testimony.

Montoya also contends that Dr. Taubert incorrectly evaluated Dr. Merritt's RFC evaluation. Dr. Taubert testified that based on Dr. Merritt's evaluation Montoya would not be able to perform any level of work, that Dr. Merritt's report indicated "total bedfast" and was unrealistic, and that Dr. Merritt's opinion that Montoya could not lift one pound was unrealistic. (Tr. 566.) At first glance Dr. Taubert's opinion appears to be an inaccurate summary of Dr. Merritt's opinion. However, there was some confusion at the hearing as to which RFC opinion Montoya's representative referenced when he asked Dr. Taubert for his opinion. A review of the record and the hearing transcript indicates that Montoya referred to the RFC evaluation Dr. Merritt completed on February 17, 2003, and that Dr. Taubert referred to the RFC evaluation Dr. Merritt completed on August 28, 2002. (Tr. 337-43, 348-49.) Dr. Taubert's evaluation of the 2002 RFC evaluation is a fair summarization of Dr. Merritt's RFC assessment. (*See* Tr. 566, 348-49.) Therefore, there was no error.

Montoya next argues that there is no evidence to support Dr. Taubert's opinion regarding her RFC. Dr. Taubert testified that he believed Montoya could perform light work with a sit/stand option. (Tr. 562.) He testified that there was no evidence to confirm Dr. Merritt's opinion that Montoya was unable to perform "the easiest activities of daily living" and that ". . . her other treating physicians talked about failed back but [that she was] still able to perform light work. Like for instance, a sit and stand option." (Tr. 561-62.) While it may be true that none of Montoya's physicians specifically stated that she could perform light work with a sit/stand option, their records support such a conclusion. Immediately after her injury, Montoya was released to light work duty with recommendations

that she could lift, push, and pull a maximum of 30 pounds but that she was restricted from repetitive bending. (Tr. 429.) Thereafter, a number of doctors found that Montoya was at maximum medical improvement and assessed her impairment rating at 5 percent. (Tr. 236-39, 263-64.) Montoya's range of motion was described as "superb" and "excellent," her flexion was good, she exhibited no sensory loss and no motor loss, there was no evidence of muscle spasm, and despite her subjective complaints of radicular pain and Dr. Merritt's reports of radiculopathy, physicians consistently reported and testing showed that there was no evidence of radiculopathy. (Tr. 223-24, 233, 264, 268, 277-78.) Before she underwent spinal fusion, evidence showed that there was a tear at the posterior annulus at the L3-L4 disc with minimal herniation. (Tr. 268, 272, 277.) After the fusion, with the exception of minimal scoliosis, imaging of Montoya's spine was "unremarkable." (Tr. 306, 308.)

Montoya's arguments center, in large part, on the differences of opinion between Drs. Merritt and Taubert. It should be noted that although Dr. Merritt assessed Montoya's impairment rating to be 19 percent, he did so less than one week after Montoya underwent the IDET procedure. (Tr. 187.) On the date of the examination, Montoya was still wearing an orthopedic support, or a "corset" which could not be removed for examination. (*Id.*) Dr. Merritt specifically noted that Montoya had deficits in her range of motion that were attributable to the corset and the recent IDET procedure, and noted that her range of motion would improve over time. (Tr. 188.) He nonetheless decided to assign Montoya an impairment rating of 19 percent "based on her present condition." *Id.* In addition, as Judge

Lewis noted, Dr. Merritt's RFC assessment, which limited Montoya to less than sedentary work was done before Montoya underwent the fusion. (Tr. 20.)

An ALJ has discretion to determine the credibility of medical experts and determine the weight of their opinions accordingly. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Based on the evidence as summarized above, substantial evidence supports Judge Lewis' decision to rely on Dr. Taubert's testimony.

In her final argument, Montoya contends that the Vocational Expert (VE) committed perjury during the hearing and, therefore, Judge Lewis' finding that she could perform alternative work is not supported by substantial evidence. The vocational expert testified that, based on her RFC, Montoya could perform the job of small products assembler, which has 70,000 positions nationally and 2,500 positions regionally; the job of folding machine operator, which has 50,000 positions nationally and 3,900 positions regionally; and the job of microfilm mounter, which has 33,000 positions nationally and 2,700 regionally. (Tr. 567.) Montoya's representative questioned the VE in regard to the methodology he employed to obtain the regional numbers. (Tr. 568.) The VE explained that he obtained the numbers from the Texas Labor Market Review, which is published by the Texas Workforce Commission (TWC) and available on the TWC website. (*Id.*) In response to further questioning, the VE testified that the numbers could be obtained by searching for either the job title or the corresponding Dictionary of Occupational Titles (DOT) number. Montoya contends that the VE lied about his sources and simply "made up" the regional job numbers.

She contends that she was unable to obtain the numbers from the TWC site and that a representative from the TWC informed her that such data was not available from the site.

At the fifth step of the disability evaluation process the Commissioner carries the burden of identifying the particular types of work the claimant can do despite his impairments. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R.§ 404.1520(f)). Congress has directed that a person can be found disabled only if his impairments prevent him from engaging in substantial gainful work "which exists in the local economy, regardless of whether such work exists in the immediate area in which he lives." 42 U.S.C. § 423(d)(2)(A). Congress defined "work which exists in the national economy" as "work which exists in significant numbers either in the region where such an individual lives or in several regions in the country." *Id.*; *see also* 20 C.F.R. § 404.1566(a). Thus, the Commissioner meets her burden of showing that the claimant can perform work which exists in *either* the region in which the claimant lives *or* in the national economy at large. In this case, the VE testified that Montoya could perform a total of 153,000 jobs in the national economy. (Tr. 567.) Even if it were assumed that the VE testified untruthfully regarding the method for obtaining the regional numbers, such testimony would not invalidate his testimony regarding the number of jobs in the national economy.

The court's task is limited to determining whether substantial evidence supports the Commissioner's decision. Because the Commissioner identified a significant number of

jobs that Montoya could perform in the national economy, she met her burden at the fifth step; thus, a finding that Montoya is not disabled is mandated. *See* 42 U.S.C. § 423(d)(2)(A).

IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Montoya's Complaint with prejudice.

V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: October 20, 2004.

NANCY M. KOENIG
United States Magistrate Judge